CHARLES R. CARROLL, EXECUTOR OF JOHN L. FRANCIS, *vs.* GRACE ALSTON AND OTHERS.

On the 29th January, 1866, F and L, by written articles of that date, formed a copartnership in the business of barbering. The material stipulations were: (1) That the copartnership should continue for ten years. (2.) That the business should be carried on at the building and lot No. 362, &c., owned by F, at a yearly rental of seven hundred dollars, to be paid him by the firm. (3) That the parties should contribute equally, and the profits be equally divided. (4.) That regular books should be kept; and, (5.) That, if either party should die within the ten years, the copartnership should be regarded as ended, and a settlement be made : Provided, That if F should die within

Carroll *vs.* Alston.

the ten years L should have the right to retain the said building and lot
until the expiration of that period "upon the same terms and annual rent
which, by these articles, it is stipulated should be awarded to F for the use
thereof." F died in September, 1866, and L continued to carry on the busi-
ness at the same building and lot. *Held,* That the copartnership was dis-
solved by the death of F, and that L was not liable to account to F's execu-
tor for profits made after the dissolution.

BEFORE LESESNE, CH., AT CHARLESTON, MARCH, 1868.

Bill by the executor of John L. Francis, deceased, the testator
in the cause, against his legatees, devisees and others, praying that
the trusts of the testator's will may be performed—that the rights
and interests of all the parties under the same may be ascertained
and declared, and the plaintiff instructed upon all the complicated
and grave questions arising thereunder.

To understand, however, the question raised by the appeal, it is
only necessary to state: That on the 29th of January, 1866, the
testator and Edward W. Lee, a party defendant, formed a copart-
nership "in the business of barbering and manufacturing segars,"
under written articles bearing that date. The articles stipulated:
(1.) That the copartnership should commence on the day of the
date of the articles and continue for ten years. (2.) That the name
of the firm should be Francis & Lee, and the business should be
carried on in the City of Charleston, at the building No. 362, &c.,
which belonged to the testator, at a yearly rental of seven hundred
dollars, to be charged on the books of the copartnership against the
firm, and to the credit of the testator. (3.) That each party should
contribute an equal amount of money or capital, and that the net
profits should be equally divided. (4.) That such regular books as
are in use among merchants should be kept, and each party should
be at liberty at all times to examine the same. And it was finally
agreed and stipulated as follows: "In the event that either of the
said partners should, before the expiration of the period specified
for the continuance of the said copartnership, depart this life,
the said copartnership shall be regarded as ended and deter-
mined, and a settlement be made by the survivor with the execu-
tor or administrator of the one deceased: Provided, however,
nevertheless, That if the said party of the first part (John L. Fran-
cis) should depart this life before the expiration of the said speci-
fied period for the continuance of the copartnership, the said party
of the second part (Edward W. Lee) shall be at liberty, and have
the privilege, to retain the building, lot and appurtenances, herein-

before set forth, and in which it is recited that the business of the copartnership is to be continued, until the period prescribed for the termination of the copartnership, upon the same terms and annual rent which, by these articles, it is stipulated should be awarded to the party of the first part for the use thereof."

The business of manufacturing segars was soon abandoned by the mutual consent of the partners, and the business of barbering was carried on by the firm at the building mentioned in the articles until some time in September, 1866, when the testator departed this life. The defendant, Edward W. Lee, continued to carry on the business of barbering at the same place. He offered to pay the rent of seven hundred dollars per annum, but the executor insisted that, by the terms of the articles, he was liable to account for one-half the net profits of the business as long as he occupied the building and lot; and this was the only question made by the appeal.

The decree of His Honor the Chancellor is as follows:

LESESNE, Ch. The articles of copartnership between the testator and Edward W. Lee contemplate the continuance of the copartnership for a term of ten years, and provide for the contingency which occurred, namely, the death of testator before the expiration of the term, in these words, to wit: " The said party of the second part (Edward W. Lee) shall be at liberty, and have the privilege, to retain the building, lot and appurtenances, until the period prescribed for the termination of the copartnership, upon the same terms and annual rent which, by these articles, it is stipulated should be awarded to the party of the first part, (J. L. Francis,) for the use thereof."

The building and lot referred to belonged to the testator, and the agreement was, that the business should be carried on on it, and the rent of the same should be $700 per annum, which should be charged against the firm on their books, and credited to the testator. On the part of Lee, who availed himself of the privilege secured to him by the articles, it is contended that he is only bound to account for the rent of $700 per annum. It is urged, on the other hand, that he is bound to comply with other terms set forth in the agreement. And the Court is of opinion that, in the abstract, the language of the articles ("same terms and annual rent") demands the latter construction. There were other terms

besides the payment of rent, and its due effect must, therefore, be given to the word " terms."

What, then, are the other terms by which the firm became bound ? They are: 1. That the business of barbering and manufacturing segars shall be carried on.  2. That each party shall contribute equal amounts of money or capital for the puposes of the business. 3. That the net profits shall be equally divided between the parties, and that books shall be regularly kept, which shall be ex-̇ aminable at any time by either one of the partners.

As to the first, it appears that no segars have ever been made, the business having been confined to barbering.  But the testimony is, that it was mutually determined, in the life time of the testator, to abandon the department of segar making, the copartners having become satisfied that that business would not be profitable.  The survivor, therefore, has not committed a breach of contract, and the executors have no just cause of complaint against him in this regard.

As to the second, the testator did not put in any capital, in the sense intended, and the other partner was, therefore, not bound to put in any.

As to the third, the Court is of opinion that the survivor, so long as he continues the business in pursuance of the privilege accorded to him by the articles of copartnership, is liable to account to the executors of the deceased copartner for one-half of the net profits of the business ; and that it is his duty to keep clear accounts of the same.  It may be that the good will of the stand was the consideration of this part of the agreement.  But, whatever was the consideration, such is the effect of the agreement.  It was, moreover, optional with the survivor to avail himself of it or not; and he may terminate it if he be so minded.  But his omission, up to this time, does not operate a forfeiture of his right.

The judgment of the Court is in accordance with the foregoing views, and either of the parties may apply, at the foot of this decree, for any orders necessary or proper for carrying it into effect.

The defendant, Edward W. Lee, appealed, on the grounds :

1. Because, under the articles of copartnership between the testator, John L. Francis, and the said defendant, Edward W. Lee, the latter had the right reserved to him, in the event of his survivorship, to retain possession of the lot of land in King street for the remainder of the term of ten years, during which the partner-

ship was to continue, upon the condition of paying a rental of seven hundred dollars per annum.

2. Because the decree is erroneous, in so far as it directs an account between the executor of the testator and the defendant, Edward W. Lee, when no such claim is made or set up by the said executor, and the questions in dispute as to the articles of partnership, which arose and were discussed before the Chancellor, were between the two defendants, Laurens F. Campbell and Edward W. Lee, the former claiming from the latter the delivery to him, as devisee under the will, of the premises.

*Buist*, for appellant.

*Whaley*, contra.

Dec. 23, 1868. The opinion of the Court was delivered by

WILLARD, A. J. Plaintiff filed his bill in equity, as executor of J. L. Francis, to obtain the aid of the Court in performing and carrying into execution the trusts of the will of his testator. Laurens F. Campbell and E. W. Lee were made parties defendant, the former as devisee and residuary legatee under the will, and the latter as tenant in possession of a house and lot on King street, Charleston, which, by the sixth clause of the will, was specifically devised to L. F. Campbell for life, with remainders over as follows: as to a moiety thereof, to the children of L. F. Campbell living at his death; and as to the other moiety, to E. Houston and others.

The bill prayed that the trusts of the will of the said J. L. Francis may be performed and carried into execution by and under the direction of the Court, and that the rights and interests of all parties under the same, in the real and personal estate of the said J. L. Francis, may be ascertained and declared by decree, and the plaintiff instructed upon all complicated and grave questions arising under the will.

Lee answered, submitting to the Court certain rights claimed under articles of agreement, exhibited and forming part of the case, made between himself and the testator, J. L. Francis, on the 29th day of January, A. D. 1866.

L. F. Campbell answered the bill, submitting to the Court his right, under the agreement just referred to, for the construction of the Court.

Testimony was taken bearing on the relative rights of Campbell

and Lee, and a decree made, covering the questions at issue between the plaintiff and the two defendants last named.

The facts of the case, as far as they are necessary to explain the decree, are, briefly, as follows: The testator, during his life time, entered into an agreement with Lee to become partners in the business of barbering and segar making, to commence on the 29th of January, 1866, and continue ten years. Provision was made, as to the capital and stock of the respective parties to be employed in the business, for an equal division of profits, and as to other matters appertaining to a partnership business. The clauses of this agreement bearing upon the present case are as follows:

"The said party of the first part agrees to allow the said building, together with the lot of land on which the same is situated, and all the appurtenances thereto belonging, to be used for the purposes of the said copartnership during the whole time that the same is to continue, at a rental of $700 per annum, to be charged on the books of the said copartnership against the firm, and to the credit of the said party of the first part" (J. L. Francis.) Also, as follows: "In the event that either of the said partners should, before the expiration of the period specified for the continuance of the said copartnership, depart this life, the said copartnership shall be regarded as ended and determined, and a settlement made by the survivor with the executor or administrator of the one deceased: Provided, however, nevertheless, That if the said party of the first part should depart this life before the expiration of the said specified period for the continuance of the copartnership, the said party of the second part shall be at liberty, and have the privilege, to retain the building, lot and appurtenances, hereinbefore set forth, and in which it is recited that the business of the copartnership is to be continued, until the period prescribed for the termination of the copartnership, upon the same *terms* and annual rent, which, by these articles, it is stipulated should be awarded to the party of the first part for the use thereof."

The Chancellor held "that the survivor, so long as he continues the business in pursuance of the privilege accorded to him by the articles of copartnership, is liable to account to the executor of the deceased copartner for one-half of the net profits of the business; and that it is his duty to keep clear accounts of the same."

The partnership terminated with the death of either party. Can

the right to net profits survive that event? The consideration of the agreement, in the present case, was the mutual skill and services of the copartners, for the profits of the business did not depend on capital. but upon skilled labor, and, accordingly, ceased with the death of either of the copartners. The object of the copartnership was profits, and the equity of the agreement depended upon an equal division of the labors and the advantages of the enterprise. The house and lot cannot be regarded as capital, or as entering, otherwise than collaterally, into the common stock.

It was compensated for by a fixed rent, paid out of the profits, but enuring to the sole advantage of the testator. The right to net profits is the principal fruit and incident of the copartnership, and, therefore, ceased with it. Upon any other construction, the language of the contract is nugatory. It would be virtually declaring as the intent of the parties, that, in the event of the death of one of the parties, his interest should continue for the benefit of his representatives, free from the necessity of either contribution to the common interest or liability for losses.

The language of the parties, the policy of the law that declares the death of a copartner a dissolution of his copartnership engagements, and the equity of the agreement in question, conspire to preclude such a construction.

The conclusion of the Chancellor was induced by a supposed necessity of finding some idea in the contract corresponding to the word " terms," employed in conjunction with " annual rent." It is assumed that the word " terms" is ambiguous, and that construction must be resorted to to fix its meaning.

However imposing that necessity may be, it certainly is not justifiable to unsettle the clearly expressed intent of the parties as to subjects that are free from obscurity.

To allow this would be to propagate an ambiguity, confined to one of those expressions that are very much a matter of form in legal instruments, throughout the body of the whole agreement. Such is not regarded as the proper office of construction, especially when it depends on verbal criticism.

It is not necessary to fix the precise object of the introduction of the word "terms," as it does not fall within the proper scope of the present bill to ascertain what interests, as between Campbell and Lee, depend upon it.

We are of opinion that the decree of the Chancellor, so far forth

as it directs an account to be taken of the profits of the business after the decease of the testator, is erroneous.

## JUDGMENT.

It is adjudged and decreed, that the decree of the Chancellor, so far forth as it adjudges the defendant, Edward W. Lee, liable to account to the complainant, as executor of John L. Francis, deceased, for one-half of the net profits of the business carried on by him, from and after the decease of the said Francis, and bound to keep clear accounts of the same, and as directs the said Edward W. Lee to account in respect thereof, be, in all things, reversed, and that the case be remanded to the Chancellor, to proceed therein as to all matters not adjudged hereby.

*Hoge,* A. J., concurred.